```
 1                      UNITED STATES DISTRICT COURT
                        CENTRAL DISTRICT OF CALIFORNIA
 2                      WESTERN DIVISION - LOS ANGELES

 3

 4    MECHANLOO, LLC,              )   Case No. CV 21-6699-DSF (ADSx)
                                   )
 5         Plaintiff,              )   Los Angeles, California
                                   )   Wednesday, October 12, 2022
 6             v.                  )   11:00 A.M. to 11:11 A.M.
                                   )
 7    KARIM BOUMAJDI, et al.,      )
                                   )
 8         Defendants.             )
                                   )
 9

10

11

12                       TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE AUTUMN D. SPAETH
13                    UNITED STATES MAGISTRATE JUDGE

14

15   Appearances:              See Page 2

16   Deputy Clerk:             Kristee Hopkins

17   Court Reporter:           Recorded; CourtSmart

18   Transcription Service:    JAMS Certified Transcription
                               16000 Ventura Boulevard #1010
19                             Encino, California  91436
                               (661) 609-4528
20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1  APPEARANCES:

 2

 3  For the Plaintiff:      Lewis Roca Rothgerber Christie LLP
                            By:   STEVEN ANDREW WILSON
 4                          655 North Central Avenue, Suite 2300
                            Glendale, California   91203-1445
 5                          (626) 795-9900
                            dwilson@lewisroca.com
 6

 7
     For the Defendants:    None Present
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>LOS ANGELES, CALIFORNIA, WEDNESDAY, OCTOBER 12, 2022, 11:00 A.M.</u>

THE CLERK: Calling Case CV 21-6699-DSF (ADSx), *Mechanloo, LLC v. Karim Boumajdi, et al.*

And, counsel, please state your appearances when you have reached the microphone starting with plaintiff.

STEVEN ANDREW WILSON: Good morning, Your Honor. Drew Wilson with Lewis Roca Rothgerber Christie for the Plaintiff Mechanloo.

THE COURT: All right. Good morning, Mr. Wilson.

All right. And as I understand it, we -- now my microphone is on.

As I understand it, we don't have an appearance from defense counsel; is that correct?

MR. WILSON: Yes, Your Honor. I haven't seen them. There was no communication or email or phone call regarding the hearing so I don't --

THE COURT: Okay. Could you -- as I understand it from my courtroom deputy trying to reach out, counsel for the defendants didn't have this on his calendar. I'm not sure that we know why he didn't have this on his calendar but -- and he is apparently in Pasadena, and I'm not sure if he's not planning on driving down? He is not. Okay.

So -- but he notified us that he is submitting on the papers.

THE CLERK: Well --

```
 1              THE COURT:  (Reading) We submit to any judge -- any
 2   decision Judge Spaeth makes on the papers.  Issue will not
 3   admit me to appear remotely.  (End reading.)
 4              Was this motion served on the counsel that is
 5   counsel in this case?
 6              MR. WILSON:  I do not know specifically if it was
 7   served on counsel.  He made an appearance on ECF; so he would
 8   have received all the ECF notifications and had full access
 9   to the docket record.  It had previously been served on
10   counsel -- the previous counsel.  You know, they've gone
11   through a number of attorneys at this point, and it had been
12   served on previous counsel who was counsel at the time that
13   the motion had been filed.
14              THE COURT:  Okay.  And -- understood.  Have you had
15   any -- you or anyone from your office had any communication
16   with this new counsel about the motion that's pending today?
17              MR. WILSON:  Not about the motion that's pending,
18   Your Honor; about some other discovery that he served as soon
19   as he appeared.
20              THE COURT:  Okay.  All right.
21              MR. WILSON:  And I do note that previous counsel
22   indicated that he was given their entire folder and all of
23   the docket entries and whatnot when he transferred the case
24   over.  So he would have had every possible notice of this
25   short of me directly calling him and telling him to show up.
```

1            THE COURT:  Okay.  All right.  Well, you are here.
2   So do you have anything -- would you like to make an argument
3   and --
4            MR. WILSON:  Does Your Honor have any questions
5   that I can address --
6            THE COURT:  Well, not -- not having heard your oral
7   argument, not at this time.
8            MR. WILSON:  Okay.  Well, Your Honor, we're here
9   again.  As Your Honor may have read in counsel's paper
10  withdrawing the representation, Mr. Boumajdi and the
11  defendants have a history of not providing documents, and in
12  fact, that was one of the grounds why previous counsel
13  actually withdrew the representation, because he wasn't
14  providing even his own attorneys with documents.
15           The discovery at issue here is a few categories.
16  One of the categories is they've asserted a claim for fraud,
17  that he invested $250,000 into my client's business and that
18  it was fraudulently induced and that all this money just
19  disappeared and the -- a portion of the discovery requests --
20  an identification of what this money was: Show me the
21  receipts.  Show me the cashier's check.  Show me that you
22  actually made this investment.  Because there -- while there
23  are very few documents that have been produced -- and they
24  were all basically attached to their counterclaims -- those
25  don't total anywhere near $250,000.  There's a cashier's

1    check for $26,000 that went to the landlord, and there was a
2    payment to Ford that was, like, $2,000, and that was really
3    it, and so that's the order of magnitude disconnect, and so
4    we just want to see those documents.
5             Another category is asking where our money went.
6    When Mr. Boumajdi came in and started working with our
7    client, he basically took over all the accounting and
8    rerouted all of the credit card transactions from my client's
9    bank account to a separate bank account for one of the
10   defendants called "The Little Door Corporation," and as
11   attached to the motion to compel, he -- there was four months
12   or so of -- five months of records that were produced, but
13   basically the money went in from these credit card receipts
14   and then was immediately transferred out -- wired out to a
15   different account, and we don't know what those accounts were
16   or where they went, what happened to this money.  He's also
17   missing at least one month where deposits were still being
18   made to that account that we haven't received.
19            You know, another request that would be very useful
20   -- we asked for his aliases.  Mr. Boumajdi loves to use
21   aliases.  There's at least four or five names that we're
22   aware of.  In fact, he even tried to change his name, but
23   that was denied due to a pending criminal allegation against
24   him.  And so, you know, to the extent that we have to go hunt
25   third parties down to get this information because he

1 continues to refuse to produce responsive, relevant
2 documents, I need to know what he calls himself.  Is it
3 "Kevin"?  Is it "Karim"?  Is it "Boumajdi"?  Is it
4 "Aboumajdi" (phonetic)?  He has many an alias, and I actually
5 understand from a third-party that, maybe, many a
6 Social Security card as well.
7 　　　　　So basically we just -- we're looking for him to
8 prove his case.  There's other requests asking about the
9 various counterclaims that he's asserted and his affirmative
10 defenses.  None of that has been produced, and we want to
11 know what happened to the money that he took from us.
12 　　　　　And so that's basically where we're at.  We filed
13 this motion timely.  He then -- his other counsel left
14 because -- I don't know if he wasn't paying them, if he
15 wasn't following their advice, he was asserting frivolous
16 claims, as counsel indicated in their papers.  This got
17 delayed.  Now we're coming up against discovery.  Discovery
18 closes early December.  I'm going to probably have to ask the
19 Article III judge for an extension of time because I'm
20 probably going to have to file a motion for contempt on this
21 particular matter to the extent that Your Honor orders the
22 production of documents because I'm sure he's not going to
23 produce them given the history.  So this is, you know, our
24 second motion to compel, although we had to move once before.
25 　　　　　And so I would, also, ask Your Honor, given this

1   history, to award attorneys' fees in this matter.  This is --
2   we shouldn't have had to bring this motion.  We're just
3   asking him to prove his -- or to show us what documents
4   support his case and where our money went.
5          And, you know, they never served objections to the
6   discovery at issue.  To this day, replacement -- the new
7   counsel made an appearance, served us with three-dozen
8   requests for production, many of which, ironically enough,
9   were duplicative of what we served them.  We asked for an
10  indication -- "Show me all the bills that you claimed you
11  paid on our behalf."  And he asked, "Show me the bills that
12  my client paid on your behalf," which is strange, to say the
13  least.  That would be documents that they have, not us.  Yet
14  he didn't produce any of the documents that are at issue in
15  this request.  He didn't serve objections to the discovery
16  that's at issue in this request.  Basically, there's never
17  been an objection other than what was in their portion of the
18  joint stipulation.
19         My client spent a significant amount of money on
20  this motion to compel.  The joint stip is long.  We then did
21  the supplemental chart per Your Honor's request.  There was
22  the -- you know, the supplemental brief.  And then, you know,
23  today has been a long day.  I drove down from Pasadena as
24  well, actually.  I was at a ProVisors meeting, and my office
25  is in Glendale.  So, you know, that's an hour-plus drive each

1 direction. And we shouldn't have to be here for these
2 documents, and so we would request --
3     THE COURT: But I know that you thoroughly enjoy
4 getting to come into the Ronald Reagan Federal Courthouse to
5 be here with me today.
6     MR. WILSON: It is a beautiful courthouse,
7 Your Honor, and you are always very pleasant.
8     THE COURT: All right. All right. Thank you.
9     Okay. Mr. -- the new attorney didn't provide to me
10 any specific reason why he didn't have this hearing on his
11 calendar. He just simply stated that he didn't. And we
12 notified him that this is an in-person hearing, and he
13 basically has notified me that he doesn't intend to appear in
14 person and didn't -- and although he's asked to appear
15 remotely, he didn't state -- provide me a reason why he's not
16 here. As you stated, every attorney who has filed a notice
17 of appearance has access -- well, every person in the country
18 can get access to our electronic documents to find out what's
19 scheduled, and certainly there would have to, probably, be
20 malpractice if somebody didn't notify him of this hearing or
21 if he didn't find it.
22     So at this time I am going to grant the motion.
23 I've reviewed the parties' briefing, the relevant legal
24 authority, and the record in this case. I've considered the
25 parties' arguments, and I'm granting the motion to compel.

1    Defendants.  Karim Boumajdi, BRH Investments Ltd. and
2    The Little Door Corporation are ordered to produce
3    supplemental responses and responsive documents.
4              Now, Counsel, you -- when would you like to request
5    that these be served?  What is a reasonable time?  What do
6    you need them by given your discovery cutoff in this case?
7              MR. WILSON:  As soon as reasonably possible,
8    Your Honor.  I mean, a couple of weeks, at most, because
9    there's -- I think discovery ends very early December and
10   we're middle of October already.
11             THE COURT:  All right.  So today is the 12th.  So
12   why don't we say October 26th?  Is that okay?  That's two
13   weeks.
14             MR. WILSON:  Yes, Your Honor.
15             THE COURT:  Okay.  Now, to the extent that
16   plaintiff has requested attorneys' fees as part of the
17   motion, I'm going to deny the request at this time without
18   prejudice in light of the fact that there -- the itemized
19   statement that is required to support a request for
20   attorneys' fees isn't attached to the motion, and if
21   plaintiff chooses to do so, then it must file a separate
22   motion for attorneys' fees.  Counsel may choose to sort of
23   lump everything together as a result of whatever happens in a
24   -- you know, the Court would prefer fewer motions, rather
25   than more.  But I'm also going to order that, if you do that,

1  that you be sure that you are meeting and conferring with
2  opposing counsel, as required by our Local Rules, in an
3  attempt to try to reach a settlement without using Court
4  resources on such an issue.  All right?
5          MR. WILSON:  Yes, Your Honor.
6          THE COURT:  Okay.  All right.  Now, that is going
7  to -- that's the order of the Court.
8          MR. WILSON:  Thank you very much, Your Honor.
9          THE COURT:  All right.  Anything further?
10         MR. WILSON:  No, ma'am.
11         THE COURT:  All right.  Thank you.
12      (Proceedings adjourned at 11:11 a.m.)
13 ///
14 ///
15
16
17
18
19
20
21
22
23
24
25

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10                         CERTIFICATE

11      I certify that the foregoing is a correct transcript
12   from the electronic sound recording of the proceedings in the
13   above-entitled matter.

14   /s/ Julie Messa                  November 15, 2022
     Julie Messa, CET**D-403          Date
15   Transcriber
16
17
18
19
20
21
22
23
24
25
```